AO106 (Rev. 12/03) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Facebook User ID 100002381223343 that is stored at premises controlled by Facebook, as further described in Attachment A

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

Case Number: 2:12mj63-CSC

I, __Erik K. Doell__ being duly sworn depose and say:

I am a(n) __Special Agent/Federal Bureau of Investigation__ and have reason to believe
            Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

Facebook User ID 100002381223343 that is stored at premises controlled by Facebook, as further described in Attachment A,

in the _____Middle_____ District of _____Alabama_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
property that constitutes evidence and instrumentalities of the commission of a criminal offense

concerning a violation of Title __18__ United States code, Section(s) __875, 2251, 2252, 2252A, 2422(b)__

The facts to support a finding of probable cause are as follows:

See attached Affidavit

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

__3/15/2012__ at __Montgomery__ __Alabama__
Date                              City                          State

__CHARLES S. COODY , U.S. MAGISTRATE JUDGE__
Name of Judge            Title of Judge

_____
Signature of Judge

Case 2:12-mj-00063-CSC   Document 1   Filed 04/24/12   Page 2 of 16

IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF ALABAMA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
**FACEBOOK USER ID 100002381223343**
THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK

Case No. 2:12mj 63-CSC

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Erik K. Doell, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) currently assigned to the Mobile Division and stationed in Montgomery, Alabama. I have been so employed since February 17, 2009. As part of my regular duties, I am authorized to investigate matters involving online enticement (18 U.S.C. § 2422(b)), transfer of obscene matter to a minor (18 U.S.C. § 1470), threatening communications (18 U.S.C. § 875), and child pornography (18 U.S.C. §§ 2251, 2252, and 2252A).. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have also participated in the execution of search warrants which involved child exploitation and/or child pornography offenses.

2. I make this affidavit in support of an application under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for a search warrant for information associated with a certain Facebook account – **user ID 100002381223343, email address danielappleton96@aol.com, and name Daniel Rodgers** – that is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered at 151 University Avenue, Palo Alto, California, 94301. The information to be searched is described in the following paragraphs and in Attachment A. The search warrant sought in this application would require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer operating the web sites, including the contents of communications.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

Case 2:12-mj-00063-CSC   Document 1   Filed 04/24/12   Page 3 of 16

## STATUTORY AUTHORITY

4. Title 18, United States Code, Section 875(d) provides that it is a federal crime to transmit in interstate or foreign commerce any communication containing any threat to injure the reputation of the addressee or of another with the intent to extort from any person any money or other thing of value.

5. Title 18, United States Code, Section 2703(a) provides that, pursuant to a search warrant issued by a court of competent jurisdiction, a governmental entity may require a provider of electronic communication service to disclose the contents of an electronic communication that has been stored electronically for 180 days or less.

6. Title 18, United States Code, Section 2703(b)(1)(A) provides that, pursuant to a search warrant issued by a court of competent jurisdiction, a governmental entity may require a provider of remote computing service to disclose the contents of an electronic communication that has been stored electronically for more than 180 days.

7. Title 18, United States Code, Section 2703(c)(1)(A) provides that, pursuant to a search warrant issued by a court of competent jurisdiction, a governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications).

8. Title 18, United States Code, Section 2711 defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communications system."

9. Title 18, United States Code, Section 2711 defines "governmental entity" to include any department or agency of the United States and defines "court of competent jurisdiction" to include any district court of the United States (including a magistrate judge of such a court) that has jurisdiction over the offense being investigated.

## TECHNICAL BACKGROUND

10. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

11. Facebook asks users to provide basic contact information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

12. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to

2

particular Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

13. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

14. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

15. Facebook has a Photos application, where users can upload an unlimited number of albums and photos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

16. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

17. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

18. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

19. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

20. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

21. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: friend lists; groups and networks of which the user is a member; "News Feed" information; "Wall" postings; "Notes"; status updates; links to videos, photographs, articles, and other items; event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

22. Facebook assigns a unique "user ID" to each registered user account. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

23. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

24. Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and account application.

Case 2:12-mj-00063-CSC   Document 1   Filed 04/24/12   Page 6 of 16

## PROBABLE CAUSE

### Alabama Victims

25. On April 7, 2011, Prattville, Alabama Police Department investigators were contacted by an officer assigned to the Prattville Junior High School, Prattville, Alabama, in reference to an unidentified subject soliciting young girls for inappropriate acts over Facebook using the name "Tyler Mielke."

26. Officers met with several of the juveniles at Prattville Junior High School while accompanied by a guidance counselor. The juveniles stated that a subject that goes by the name "Tyler Mielke" had contacted them on Facebook with a Friend Request or through the Facebook Messaging Service. Once they accepted him as a friend and he had gained their trust through chatting, all the juveniles stated he would ask them their bra size. The juveniles stated that the subject would then question them in reference to their sex life. If the female juveniles had not ended the conversation by this point, the subject would then ask them to send him a picture of their breasts.

27. If the subject did not get a picture, he would then proceed to tell the juveniles that he was going to e-mail their conversation to the school principal or post it on Facebook for everyone to see. The subject also made telephone calls to several of the juveniles. Utilizing "spoofing" technology, he made the calls look as if they were coming from the Prattville Junior High School. The phone number that showed up on the juveniles' caller ID, however, was the incoming line to the Prattville Junior High. [When an outgoing phone call is placed from Prattville Junior High, it shows up on a caller ID as a different number.]

28. The subject told the juveniles that he was a freshman at Montgomery Academy in Montgomery, Alabama. Prattville Police Department Investigators confirmed that no-one by the name of "Tyler Mielke" has ever attended Montgomery Academy.

29. Tyler Mielke's Facebook page, which was assigned Facebook user ID 100001247998286, stated that he was a senior at South Walton High School in Florida. Prattville Police Department Investigators confirmed with the Walton County Sheriff's Office that a "Tyler Mielke" does not and has not attended South Walton High School.

30. On the weekend of April 10-11, 2011, "Tyler Mielke" contacted a friend of a juvenile victim on Facebook, made the comment that the juvenile victim was, "So hot," and wrote, "I want to take her and keep er."

31. On April 12, 2011, Prattville Police Department Investigators contacted the Facebook Law Enforcement Hotline to request the Internet Protocol (IP) addresses that were used to login to Facebook ID 100001247998286. Facebook provided those login addresses, including the IP address 24.158.234.87, all of which were shown to be assigned to Charter Communications. Charter informed the Prattville investigators that on the dates and times in question, the IP address 24.158.234.87 was assigned to a subscriber at 2 Creek Drive, Montgomery, Alabama, 36117.

Case 2:12-mj-00063-CSC Document 1 Filed 04/24/12 Page 7 of 16

32. On April 14, 2011, Prattville investigators executed a state search warrant at the residence of CHRISTOPHER PATRICK GUNN, 2 Creek Drive, Montgomery, Alabama, 36117, wherein four (4) computers, an external hard drive, and 3 flash drives were seized, along with other items. Upon examination of the computers, information was derived showing that one of the computers had accessed the "Tyler Mielke" Facebook account, as well as another Facebook account with the name, "Jason Lempke" (Facebook user ID 100001454978305).

33. The forensics were conducted, in part, through the use of a software program called Internet Evidence Finder. Through the use of this tool, information was derived that the "Jason Lempke" account had been used in the same manner to target juvenile females. Files referencing the "Jason Lempke" profile were saved onto the computer.

34. Upon review of the Facebook messages of "Tyler Mielke," investigators found the following message, which references the subject's "friend":

> Recipients: Baylee O'Marra (100000098727210), Tyler Mielke (100001247998286)
>
> Author: Tyler Mielke (100001247998286)
>
> Sent 2011-03-02 19:20:38 UTC
>
> *Body ok just for fucking blocking my friend he says hes sending it all out to the schools email directory plus the soccer team and all of ur facebook friends cuz he saved it all! Do u really want ur parents to read it all?*

35. Based upon my training and experience, as well as information provided to me by other law enforcement officers, I know that people who engage in this kind of behavior, sometimes referred to as "sextortion," often utilize multiple social networking accounts and multiple email accounts to communicate with their victims online. These additional accounts are commonly used to establish other fictitious user profiles, which allow the subject to increase pressure on the victims by essentially playing one off of the other. Therefore, I believe Mielke's reference to a "friend" is, in fact, an indicator that the subject was using another Facebook account to communicate with young girls.

36. The investigation to date has revealed that the subject routinely searches for female juveniles on Facebook in the surrounding area and sends them a Friend Request or message to chat with him. From January 2011 through April 2011, the subject contacted or attempted to contact over 250 separate juvenile females in the greater Montgomery area utilizing the user name of "Tyler Mielke."

Case 2:12-mj-00063-CSC   Document 1   Filed 04/24/12   Page 8 of 16

Mississippi Victims

37. On or about September 12, 2011, I was informed by the Biloxi, Mississippi Police Department that an individual utilizing the email address dalton.powers1@yahoo.com, and having taken over the Facebook account of ███████on123@yahoo.com, was contacting juvenile females and coercing them to send naked or topless photographs of themselves to him. The individual would then direct the juvenile female to get on Skype, threatening that if she refused, he would send the pictures to the girl's family members.

38. The Biloxi Mississippi Police Department's investigation revealed that the individual committing these offenses was using an IP address assigned to William Dudley of 8444 Melbourne Circle, Montgomery, Alabama.

Louisiana Victims

39. On September 30, 2011, I received from the Livingston Parish, Louisiana Sheriff's Office information that an individual utilizing the Facebook name "CJ HARPER," hereafter "CJ," and email addresses of dalton.powers1@yahoo.com and cj.harper123@yahoo.com, had contacted numerous minor females in Louisiana through Facebook, Skype, text messaging, and Tinychat.

40. Three underage females – (1) M.L. a 12 year old juvenile female, (2) K.H. a 14 year old juvenile female, and (3) K.B. a 15 year old juvenile female – all corresponded with the individual using the name CJ HARPER on Facebook, via email and other electronic means.

   *M.L.*

   a. M.L. sent pictures of herself exposing her breasts and vagina to CJ HARPER at dalton.powers1@yahoo.com.

   *K.H.*

   b. K.H. corresponded with CJ HARPER for approximately a month from July to August 2011. CJ advised K.H. that he was new to the area and was making friends. He ultimately got K.H. to give him her cellular telephone number. CJ asked K.H. if it was okay if he asked her personal questions and if she would agree to answer them truthfully, and K.H. agreed.

   c. CJ asked K.H. questions such as, but not limited to: What is your bra size? Do you shave and how often? Are you a virgin? and What have you done with a boy? After K.H. answered these questions, CJ requested that K.H. send him a picture to his email address dalton.powers1@yahoo.com. CJ threatened K.H. that if she did not send him pictures of her in her bra that he would send their chat history to her mother, father, school principal, etc.

7

d. K.H. begged CJ not to and ultimately sent him a picture of herself in her bra. After this picture, CJ threatened to post the picture on a website called www.tinypic.com if she did not send him more. K.H. ultimately sent CJ pictures of herself, to include one where she is completely nude exposing her vagina and breasts. The situation continued with CJ threatening to expose K.H.'s pictures unless she continued to send him more. CJ specifically threatened to expose all of K.H.'s pictures unless she got on her webcam for him. At CJ's direction, K.H. went to www.tinychat.com and there performed lewd acts on herself, to include inserting her fingers into her vagina.

e. CJ then asked K.H. about her nine year old sister, such as what size bra she wears. CJ asked K.H. to send him pictures of her little sister. K.H. told CJ that she would not send him photos of her little sister, and CJ responded by threatening to expose K.H.'s lewd pictures to others if she did not send him pictures of her sister. K.H. initially denied CJ's request several times before ultimately sending CJ two pictures of herself posing with a younger female.

f. In the first picture, K.H. and the other female are in a swimming pool. CJ then advised K.H. to send him a picture where he could see both of their "tummys and swimsuit tops." K.H. advised CJ she would send it in thirty minutes. CJ then threatened K.H. that if she did not send it to him immediately he would send out her "fingering video." Thereafter, K.H. sent CJ the picture of herself and the other female in their bathing suits standing outside the swimming pool.

g. CJ then told K.H. to get on Skype or he would send out her video, but K.H. refused, telling CJ that her sister was only nine (9) years old. K.H. then stopped conversing with CJ.

<u>K.B.</u>

h. CJ friended K.B. on Facebook and began to exchange messages for approximately a month between July and August 2011. CJ told K.B. that he was new to the area and was making friends. CJ was able to get K.B. to disclose her phone number to him. CJ asked K.B. if it was okay if he asked her personal questions, and if she agreed to answer them truthfully, to which K.B. agreed.

i. CJ asked K.B. questions such as: What is your bra size? Do you shave and how often? Are you a virgin? and What have you done with a boy? K.B. answered these questions. CJ then requested K.B. send him a picture of her and wanted it sent to dalton.powers1@yahoo.com.

j. CJ threatened K.B. that if she did not send him a picture of her in her bra that he would send out their past chat/email history to her mother, father,

8

Case 2:12-mj-00063-CSC   Document 1   Filed 04/24/12   Page 10 of 16

        school principal, etc. K.B. begged CJ not to send the chat/email history and ultimately sent him pictures of her breasts.

    k. The situation continued to go on, with CJ threatening to expose K.B.'s pictures unless she sent him more. CJ threatened to expose all of K.B.'s pictures unless she got on her webcam with him.

    l. CJ directed K.B. to get on Skype, whereupon at his instruction, she performed lewd and lascivious acts on herself. K.B. eventually quit responding to CJ's threats.

41. The Livingston Parish Sheriff's Office, through their investigation, traced some of the IP addresses assigned to the dalton.powers1@yahoo.com email address between July, 2, 2011 and August 26, 2011. The addresses returned to a Nancy Hilburn of 1554 Worthing Road, Montgomery, Alabama and to the Drury Inn located at 1224 Eastern Blvd, Montgomery, Alabama.

42. I met with Jeffery Hilburn, husband of Nancy Hilburn, who stated that he and his wife had gone on a trip to the Dominican Republic for a week in July, 2011. During this time, they had an individual named Graham Gunn housesit for them.

43. Subsequent interviews of Graham Gunn, as well as Jonathan Drew Dudley (another individual who had been at the residence) provided information that CHRISTOPHER GUNN had also been present at the residence on some of the dates and times in question and had used a laptop computer on the wireless network at that location. The investigation further revealed that CHRISTOPHER GUNN was very secretive of his activities on his laptop and kept others from viewing what he was doing.

44. Additional investigation has shown additional IP addresses associated with the Livingston Parish, Louisiana victims, including an IP address assigned to a William Dudley (father of Jonathan Drew Dudley) of 8444 Melbourne Circle, Montgomery, Alabama. Jonathan Dudley provided information that, during the time periods relevant to this investigation, CHRISTOPHER GUNN had used the wireless network at his father's house, sometimes accessing the internet on the Dudley family laptop computers and other times accessing the internet on GUNN's own laptop computer.

45. On December 29, 2011, in response to a federal subpoena, Facebook provided the following list of accounts associated with Facebook User ID: 7033401, which is the Facebook account belonging to CHRISTOPHER GUNN:

| Email Address | Name | Facebook ID Number |
|---|---|---|
| christopher.gunn@auburnalum.org | Christopher Gunn | 7033401 |
| daltonwalthers@yahoo.com | Dalton Walthers | 100002363006624 |
| danielappleton96@aol.com | Daniel Rodgers | 100002381223343 |
| claytontowers@live.com | Dalton Powers | 100002463722186 |
| ▓▓▓▓nn123@yahoo.com | Dalton Powers | 100002559556844 |
| dalton.powers1@yahoo.com | CJ Harper | 100002609199164 |
| daltonpowers1@hotmail.com | CJ Harper | 100002663553779 |
| justinqasabc123@yahoo.com | Justin Babin | 100003184960188 |

46. Upon review of the limited profile of the account linked to danielappleton96@aol.com, the user posted profile picture resembles the same pictures posted on the other Facebook accounts which were utilized to contact underage females and have them email sexually explicit photographs, specifically to the dalton.powers1@yahoo.com account. The danielappleton96@aol.com account was created on May 9, 2011 and was identified by Facebook as being active, with the most recent login on October 7, 2011.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

47. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

48. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in the control of Facebook there exists evidence of a crime and contraband or fruits of a crime. Accordingly, a search warrant is requested.

49. This Court has jurisdiction to issue the requested warrant because it is "a court with jurisdiction over the offense under investigation." 18 U.S.C. § 2703(a).

Case 2:12-mj-00063-CSC   Document 1   Filed 04/24/12   Page 12 of 16

50. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

51. I certify that all of the information set forth above is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Erik K. Doell, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on March 15, 2012.

CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

11

Case 2:12-mj-00063-CSC   Document 1   Filed 04/24/12   Page 13 of 16

## ATTACHMENT A

### Place to Be Searched

This warrant applies to information associated with the Facebook user ID **100002381223343** that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered at 151 University Avenue, Palo Alto, California, 94301.

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact information, including full name, birth date, contact e-mail addresses, physical addresses (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b) All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

(c) All Neoprints, including friend lists; groups and networks of which the user is a member; "News Feed" information; "Wall" postings; "Notes"; status updates; links to videos, photographs, articles, and other items; event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

(d) All other communications and messages made or received by the user, including all private messages and pending "Friend" requests;

(e) All IP logs;

(f) All information about the user's access and use of Facebook Marketplace;

(g) The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(h) All privacy settings and other account settings;

(i) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken;

(j) All associated accounts.

**II.  Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of the statutes listed on the warrant involving Christopher Gunn since January 1, 2010, including, for each user ID identified on Attachment A, information pertaining to the following matters:

13

Case 2:12-mj-00063-CSC   Document 1   Filed 04/24/12   Page 15 of 16

(a)     Records relating to interstate extortion, threatening communications, the exploitation of children, child pornography, and other crimes against children.

(b)     Records relating to who created, used, or communicated with the user ID.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c. such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____
Date                       Signature

15